**Alton SMITH and Betty Sue Smith, Plaintiffs-Appellants,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.**

No. 81-7267.

United States Court of Appeals, Eleventh Circuit.

Feb. 17, 1983.

---

**3.** *Jones* was reaffirmed in *Clark v. State,* 363 So.2d 331 (Fla.1978).

* Judge Hatchett is disqualified and did not participate in this decision.

Neely, Player, Hamilton & Hines, Edgar A. Neely, III, Randall H. Davis, Atlanta, Ga., for plaintiffs-appellants.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Asst. Gen. Counsel, Edwin W. Small, Staff Atty., Michael R. McElroy, Tennessee Valley Authority, Knoxville, Tenn., for defendant-appellee.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

RONEY, Circuit Judge:

A flight instructor, injured when an aircraft struck an electric power transmission line, and his wife sued Tennessee Valley Authority, the owner of the line, for negligence in failing to mark the line to make it visible to pilots. After plaintiffs' evidence had been presented to the jury, the district court granted a directed verdict for defendant TVA, finding no evidence to indicate that TVA could have foreseen a danger from its failure to mark the lines. We reverse and remand for a trial.

On March 17, 1979, plaintiff Alton Smith, a licensed flight instructor, was giving flight instructions to a student pilot. After the plane in which they were riding left

Lovell Field in Chattanooga, Tennessee, the student practiced maneuvers under Smith's direction in a practice area of about 40 square miles located east of Chattanooga. The student was flying the plane approximately 1,500 feet above the ground when Smith reduced the power setting on the aircraft and asked the student to demonstrate emergency landing procedures. The student selected a grass field, located approximately 2.9 miles from the Collegedale Airport near Ooletewah, Tennessee, for the simulated emergency landing. The student began a straight-in approach to the field, and continued to a point 83 feet above the ground, where the airplane struck a ground wire which ran between towers 63 and 64 of the TVA Sequoyah—Georgia State Line transmission line. The transmission line was not marked with orange balls or contrast painting, and the student did not see it until the moment before the crash. Smith sustained critical and permanent injuries. In an action removed to federal court from a Georgia state court, Smith and his wife sought damages for the injuries resulting from the crash, contending that TVA's failure to mark the power lines was negligent.

The question on appeal is whether there was sufficient evidence of negligence to present a jury question. In determining TVA's alleged tort liability, the district court applied the law of Tennessee, the place of the injury. The parties have agreed that Tennessee law governs the negligence question. The elements necessary to establish a cause of action for common law negligence in Tennessee are: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) a causal relation between the injury to the plaintiff and defendant's breach of its duty of care. *Shouse v. Otis,* 224 Tenn. 1, 448 S.W.2d 673, 676 (1969). To determine whether a duty exists, courts consider whether a reasonably prudent person would foresee that his or her conduct might endanger the plaintiff. *See Shelton v. Russell Pipe & Foundry Co.,* 570 S.W.2d 861, 864 (Tenn.1978). Courts use a sliding scale in evaluating foreseeability. As the gravity

of the potential harm increases, the duty to prevent the harm also increases. *See Spivey v. St. Thomas Hospital,* 31 Tenn.App. 12, 211 S.W.2d 450, 456 (1947). If a reasonably prudent person would foresee the possibility of injury, the particular manner in which the injury occurs need not be foreseeable. *Id.* at 456–57.

Whether TVA had a duty to warn pilots of the transmission line depends upon whether TVA could reasonably have foreseen the possibility of a line strike by an aircraft. In ruling on a motion for directed verdict, the court should consider all of the evidence in the case, in the light and with all reasonable inferences most favorable to the party opposed to the motion. A directed verdict is appropriate only "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict...." *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). The motion should be denied if there is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions...." *Id.; see Brady v. Southern Ry. Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943) (directed verdict is proper only when there can be "but one reasonable conclusion" as to verdict).

The determination of negligence is ordinarily one for the trier of fact because of the necessity that the trier of fact assess the reasonableness of defendant's conduct under all the circumstances. *Gauck v. Meleski,* 346 F.2d 433, 437 (5th Cir.1965). The party seeking to have an issue of negligence withdrawn from the jury in federal court bears a heavy burden. *McPherson v. Tamiami Trail Tours, Inc.,* 383 F.2d 527, 528 (5th Cir.1967).

The question confronting the court is not whether the court as a trier of fact would decide the injuries sustained by Smith were foreseeable under Tennessee law, but whether there was sufficient evidence of foreseeability to require the case to be sub-

mitted to a jury for determination. There is little question that TVA knew that some transmission lines are a threat to low-flying planes and must be marked. The question is whether TVA should have realized that this transmission line was of such a character.

■ Capsulized, the following evidence could permit a jury to conclude that TVA should have foreseen the danger. (1) Mr. Wilhoite, Assistant Director of TVA's Division of Transmission, Planning, and Engineering, testified TVA was aware that airplanes strike transmission lines, and had placed some markings on towers located 12–14 miles from the site of the accident. (2) At the request of the State of Tennessee, TVA had placed orange ball markers on some transmission lines north of the Georgia border near Chattanooga. (3) The transmission line was located approximately 2.9 miles from Collegedale Airport. (4) The field in which the accident occurred was the first field in which a plane could land after experiencing engine trouble on takeoff from Collegedale Airport. A safety engineering consultant and licensed pilot testified that the most common time for engine failure is immediately after takeoff. (5) The field is also located within a designated practice area for student pilots. Designated practice areas are generally in rural communities, away from heavy air traffic. (6) A Federal Aviation Administration investigator testified that the field was a reasonable place in which to practice an emergency landing. (7) FAA regulations require flight instructors to give students instruction in simulated forced landings. Practice in emergency landing procedures is a prerequisite to a solo flight by a student pilot, 14 C.F.R. § 61.87(c)(vii), and is required for a private pilot certificate, 14 C.F.R. § 61.-107(a)(10). (8) Mr. Wilhoite testified that the sectional aeronautical map covering the area where the crash occurred was not absolutely accurate in its placement of the transmission lines. He testified that TVA knew that pilots use sectional maps while flying, and that TVA had copies of the map at the time of the accident.

We agree with the district court that there was no evidence of any statutory violation by TVA. The facts presented, however, militate against the district court's decision that "the court has been unable to find anything in the evidence that would put the defendant on notice that there was any defect in the power transmission lines or towers that would make an injury foreseeable." Realizing that the evidence is sometimes easier to evaluate after it has been transcribed, we nonetheless hold that there was sufficient evidence for a reasonable juror to conclude that TVA could have foreseen a danger from its failure to mark the power lines. Although much evidence in favor of the defendant was developed on cross-examination, on balance, it was the jury's function to evaluate all of the evidence. Under the standard of *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc), the question of foreseeability should have been submitted to the jury.

Because the award of costs should await final judgment, we do not address plaintiffs' argument that TVA's bill of costs was excessive.

REVERSED AND REMANDED.